UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH THEDE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES, INC.,<br><br>    Defendant. | Case No. 17-cv-03528-PJH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

Defendant United Airlines, Inc.'s motion to dismiss came on for hearing before this court on March 21, 2018. Plaintiff Jeremiah Thede appeared pro se. Defendant appeared through its counsel, Richard Grotch. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

## BACKGROUND[1]

On June 20, 2015, plaintiff was scheduled to fly on a United Airlines flight from Rome, Italy, to San Francisco, California. Dkt. 23, First Amended Complaint ("FAC") ¶¶ 6-7. That flight was delayed by more than three hours. Id. Because plaintiff was hungry when he boarded the plane, plaintiff asked for food to tide him over until the in-flight meal was served. Id. ¶ 7. A flight attendant explained, however, that food would not be served until the plane was airborne. Id.

After the plane took off but before the fasten seatbelt sign had been turned off,

---
[1] The court's factual recitation is taken from the allegations in the First Amended Complaint, which the court must consider as true for the purposes of a motion to dismiss.

plaintiff left his seat and renewed his request for food. Id. ¶ 8. The flight attendant informed plaintiff that because the seatbelt sign had not been turned off, the crew was unable to serve food. Id. Plaintiff renewed his request for a snack after the seatbelt sign was turned off and a flight attendant gave plaintiff a package of crackers. Id. ¶ 9.

After consuming that package of crackers, plaintiff asked for a second package but was told that each customer was limited to one snack. FAC ¶ 10. Believing that information to be false, plaintiff asked the flight attendant for her name so that plaintiff could register a complaint. Id. Though both the flight attendant and the head flight attendant refused to provide that information, plaintiff began to write-up a complaint. Id. ¶¶ 10-12. At some point later, a different flight attendant gave plaintiff another package of crackers and, according to plaintiff, "the situation began to de-escalate." Id.

Despite plaintiff's belief that the situation had de-escalated, the head flight attendant had reported to the pilot that plaintiff was creating a disturbance. FAC ¶ 13. Apparently triggered by this report, an off-duty pilot and the head flight attendant told plaintiff that if the disturbance continued, the flight would be diverted and plaintiff would be removed from the aircraft. Id. Plaintiff denied he was causing a disturbance or that he had threatened anyone—plaintiff "simply wanted to file a complaint about the poor customer service but was being denied the right to do so." Id.

After the in-flight meal was eventually served, plaintiff immediately fell asleep. FAC ¶ 14.

While plaintiff was sleeping, the airplane had been diverted to Belfast, Northern Ireland. FAC ¶ 15. When the flight arrived in Belfast, armed officers removed plaintiff from the plane. Id. Based on the accusations of the flight crew, plaintiff was charged with assault and endangering an aircraft. Id. ¶ 16. While his criminal trial was pending, plaintiff remained in Belfast under house arrest. Id. ¶¶ 16-17. After a seven-day trial, commencing April 15, 2016—approximately 10 months after plaintiff's flight took off from Rome—plaintiff was found not guilty. Id. ¶ 17.

Based on the above events, plaintiff makes claims against United for breach of

2

contract, negligence, assault, defamation, and malicious prosecution. FAC ¶¶ 18-24. Plaintiff also seeks punitive damages. Id. However, in his briefing and at the hearing on this motion, plaintiff stated that he did not oppose dismissal of his negligence, assault, and defamation causes of action. Those claims are DISMISSED WITH PREJUDICE.

Accordingly, this order only addresses the two remaining claims: plaintiff's breach of contract claim based on United's failure to fly him to San Francisco and plaintiff's malicious prosecution claim based on the flight attendants' statements leading to plaintiff's arrest and their testimony at the corresponding trial.[2]

## DISCUSSION

**A.    Legal Standard**

**1.    Motion to Dismiss Under FRCP 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court must accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] Though defendant's motion argued that certain claims should be struck under Cal. Civ. Proc. Code § 425.16(b), defendant withdrew that argument in its reply.

3

alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

### 2. Montreal Convention

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 (the "Warsaw Convention"), previously governed the rights and liabilities of passengers and carriers in international transportation by air. See El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 160 (1999). "The cardinal purpose of the Warsaw Convention . . . [was] to achieve uniformity of rules governing claims arising from international air transportation." Id. at 169 (internal quotation marks omitted). "[T]he Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.' " King v. Am. Airlines, Inc., 284 F.3d 352, 356-57 (2d Cir. 2002) (quoting the Warsaw Convention, Art. I); Tseng, 525 U.S. at 169.

The Montreal Convention (the "Convention") is the successor treaty to the Warsaw Convention. See Hosaka v. United Airlines, Inc., 305 F.3d 989, 996, 999 (9th Cir. 2002). It retains many of the same provisions and terms as the original Warsaw Convention, and courts have continued to rely on cases interpreting provisions of the earlier treaty "where the equivalent provisions in the Montreal Convention are substantively the same." See Narayanan v. British Airways, 747 F.3d 1125, 1127, n. 2 (9th Cir. 2014). Like the Warsaw Convention, the Montreal Convention "governs all international carriage of persons, baggage or cargo performed by aircraft for reward [and] provides the exclusive remedy for international passengers seeking damages against airline carriers." Id. at 1127 (internal quotation marks omitted).

4

The express language of Article 29 of the Convention makes clear that the Convention, like the earlier Warsaw Convention, preempts a passenger's federal or state law claims whether "in contract or tort," and exclusively governs the rights and liabilities of the parties. Montreal Convention, Art. 29 (henceforth, "Art. __"); Pogadaev v. Aeroflot-Russian Airlines, No. 16-CV-04718-RS, 2017 WL 3267525, at *2 (N.D. Cal. Aug. 1, 2017) (The Convention " 'precludes passengers from bringing actions under local law,' even when they cannot establish air carrier liability under the Convention." (quoting Tseng, 525 U.S. at 175)). But the Convention's preemptive effect on local law extends only as far as the Convention's own "substantive scope." Tseng, 525 U.S. at 172 (The Convention's "preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope."); see also Chattopadhyay v. Aeroflot Russian Airlines, No. CV1100443MMMRZX, 2011 WL 13220279, at *4 (C.D. Cal. Aug. 17, 2011) (same); Seshadri v. British Airways PLC, No. 3:14-CV-00833-BAS, 2014 WL 5606542, at *8 (S.D. Cal. Nov. 4, 2014) (collecting cases).

The substantive "scope is outlined in Article 1 of the Convention." Chattopadhyay, 2011 WL 13220279, at *4. In relevant part, that Article states: "This Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Art. 1.1. As relevant here, "International carriage" means:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated [ ] within the territories of two States Parties . . .[3]

Art. 1.2; see also Kao v. British Airways, PLC, No. 17 CIV. 0232 (LGS), 2018 WL 501609, at *2 (S.D.N.Y. Jan. 19, 2018) ("The Convention applies to 'international carriage by air.").

Some courts look to the Convention's liability provisions to determine whether an activity falls under the Convention's substantive scope. See King, 284 F.3d at 358;

---

[3] The United States and Italy are parties to the Convention.

5

1 Seshadri, 2014 WL 5606542, at *8. The Convention includes only three liability

2 provisions: Article 17 provides for carrier liability in the event of accidental death or bodily

3 injury of a passenger while on board, embarking, or disembarking the plane. Article 18

4 imposes liability for damage to cargo. Article 19 imposes liability for damages resulting

5 from delay of passengers, baggage, or cargo. These articles are exclusive, and

6 encompass the scope of international airline liability. See Chattopadhyay, 2011 WL

7 13220279, at *4.

However, the scope of international airline liability under Articles 17 through 19 is narrower than the "substantive scope" of the Convention. In Tseng, the Supreme Court considered the Second Circuit's holding that a plaintiff "who did not qualify for relief under the Convention could seek relief under local law for an injury sustained in the course of international air travel." See Tseng, 525 U.S. at 161. The Supreme Court reversed and held that under Article 17 "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all." Tseng, 525 U.S. at 161; Rogers v. Am. Airlines, Inc., 192 F. Supp. 2d 661, 671 n. 6 (N.D. Tex. 2001) (citing Tseng and explaining the same applies for Articles 18 and 19). Because a plaintiff's claim may be preempted by the Convention without the airline facing liability under the Convention, it necessarily follows that the Convention's substantive scope is broader than the scope of its liability provisions.

Ultimately, plaintiff's claim is preempted "if the events giving rise to the claim occurred in the course of the international carriage of passengers and baggage." King, 284 F.3d at 358. This is true regardless of whether plaintiff can recover under one of the Convention's liability provisions. Tseng, 525 U.S. at 175; Carey v. United Airlines, 255 F.3d 1044, 1051 (9th Cir. 2001) (Tseng's holding that " 'a personal injury suffered on board [an] aircraft . . . if not allowed under the Convention, is not available at all' . . . is all-encompassing—there is no exception" based on the type of injury alleged. (quoting Tseng)).

**B. Analysis**

United argues that plaintiff's breach of contract and malicious prosecution claims relate to plaintiff's conduct during the flight. Therefore, according to United, because the Convention covers all injuries that occur during the "international carriage of persons, baggage or cargo performed by aircraft for reward," Art. 1.1, plaintiff's claims are preempted by the Montreal Convention and must be dismissed.

### 1. Whether The Malicious Prosecution Claim Is Preempted

"[I]f the events giving rise to the claim occurred in the course of the international carriage of passengers and baggage," then plaintiff's claim is preempted. King, 284 F.3d at 358. This is true not only for claims premised directly on events that occurred during international carriage by air, but also for all claims that cannot be "artificially separated" from the damaging event covered by the Convention. See Fishman by Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 142 (2d Cir. 1998) (affirming "artificially separated" reasoning); Sanches-Naek v. TAP Port., Inc., 260 F. Supp. 3d 185, 191 (D. Conn. 2017) ("[A]ll state law claims allegedly arising from a damaging event covered by the [Convention], as well as all subsequent tortious conduct which cannot be artificially separated from the precipitating cause, are preempted by the Convention."); Chattopadhyay, 2011 WL 13220279, at *8 (similar).

Here, plaintiff's malicious prosecution claim is based on the United flight attendants' statements to Northern Ireland officials about the in-flight incident. Were it not for the onboard incident, the flight would not have been diverted, the flight attendants would not have made any statements to the Northern Ireland officials, and plaintiff would not have been arrested or prosecuted. Thus, the flight attendants' statements—indeed the prosecution itself—arose directly from the events that took place during the international flight. Because these events are within the substantive scope of the Convention, plaintiff's malicious prosecution claim is preempted. See also Sanches-Naek, 260 F. Supp. 3d at 193 (Convention preempted "[p]laintiffs' claims [that] ar[ose] from a series of events that occurred while Plaintiffs were boarding" the airline.);

7

1 Chattopadhyay, 2011 WL 13220279, at *2, 9 (Convention preempted all claims related to

2 delayed baggage that contained plaintiff's diabetic kit, including claims based on injuries

3 occurring two weeks after plaintiff disembarked because injuries were "inseparable from

4 the original accident"); Booker v. BWIA W. Indies Airways Ltd., 307 F. App'x 491, 493 (2d

5 Cir. 2009) ("The fact that the Appellant alleges an injury that took place outside of the

6 aircraft and several days after the flight does not make the Montreal Convention

7 inapplicable. . . . the relevant 'accident' [under Art. 17] that Appellant alleges is the taking

8 of her baggage, which occurred on board the plane.").

### 2. Breach of Contract

Plaintiff's breach of contract claim fails for largely the same reason. Rather than including any facts about the contract or the alleged breach, plaintiff argues that the Convention does not preempt his contract claim because the claim is for nonperformance and not for delay. Plaintiff contends that the latter is covered by the Convention under Article 19, but the former is not.

While plaintiff's contention may be true with regard to the Convention's liability provisions, plaintiff is incorrect that the Convention's substantive scope is determined by the type of claim asserted. As discussed above, the Convention covers incidents that occur during international carriage—regardless of the type of claim asserted—and preempts federal or state law claims that might be brought as a result of those incidents. See Carey, 255 F.3d at 1051 (Under Tseng the Warsaw Convention's exclusivity provision "is all-encompassing—there is no exception" based on the type of injury suffered); see also King, 284 F.3d at 360 ("Plaintiffs [focus on the type of claim] misapprehend[s] the nature of Article 17 and the Warsaw Convention, however. Article 17 directs us to consider when and where an event takes place in evaluating whether a claim for an injury to a passenger is preempted." (emphasis in original)).

The Ninth Circuit has spoken persuasively on this issue with regards to Article 19. In Lathigra v. British Airways PLC, 41 F.3d 535, 538 (9th Cir. 1994), the Ninth Circuit considered whether Article 19 of the Warsaw Convention preempted plaintiff's claim that

8

the airline negligently and mistakenly reconfirmed that the plaintiff had a reservation on on a non-existent flight. The court found that plaintiff's claim was not preempted because "the alleged negligence did not occur during performance of the contract of carriage but rather days before. . . . [Plaintiffs'] damages simply did not arise from a delay in the transportation by air for purposes of Articles 19." Lathigra v. British Airways PLC, 41 F.3d 535, 538 (9th Cir. 1994) (emphasis added). The court

> emphasize[d] that BA's liability here is based upon its negligent act of reconfirming appellants' reservations days before departure in a situation where the "carrier" no longer served the route in question. [But] [o]nce the passenger presents herself to the carrier or its agents as ready to begin the air journey, the Convention generally governs liability for delays in the carrier's performance, and its provisions apply until completion of disembarkation at the destination airport.

Id. at 539 (emphasis added).

The Ninth Circuit went on to explain that its "holding [ ] must be interpreted in a manner consistent with our cases discussing the Convention's reach in cases involving Article 17, which addresses actions for personal injuries that occur on board the aircraft or in the course of any of the operations of embarking or disembarking." Id. at 539. As discussed above, the Convention preempts all claims for injuries that occurred on board the aircraft or in the course of embarking and disembarking regardless of whether plaintiff can recover under Article 17. Tseng, 525 U.S. at 161, 172; King, 284 F.3d at 358 ("[W]e hold that the events in question occurred in the course of embarkation, and that the Kings' action therefore falls within the substantive scope of Article 17.").

Unlike in Lathigra, the FAC here does not allege any facts that distinguish plaintiff's contract claim from the inflight events. In fact, the FAC's only allegations involve incidents that occurred not only after plaintiff had presented himself to United as ready to begin the air journey, but after the flight was already in the air and in route to its destination. That is, all of plaintiff's allegations describe events that took place in the course of international carriage by air. As plaintiff has included no detail about the contract or when and where the alleged contract breach occurred, the court must

9

conclude that the contract claim is based on those same inflight events, which are within the Convention's substantive scope. Therefore, the Convention also preempts plaintiff's breach of contract claim.

The nonperformance cases plaintiff cites do not persuade the court otherwise. First, those cases involve situations where the contract breach did not occur during the "performance of the contract for carriage." See Wolgel v. Mexicana Airlines, 821 F.2d 442, 445 (7th Cir. 1987) (nonperformance claim not preempted where plaintiffs were bumped from their flight before being allowed to check-in); In re Nigeria Charter Flights Contract Litig., 520 F.Supp.2d 447, 450, 456-57 (E.D.N.Y. 2007) (airline "ceased operations between Nigeria and the United states, effectively terminating the flight program," leaving passengers unable to complete second leg of round trip tickets); Nankin v. Cont'l Airlines, Inc., No. CV 09-07851 MMM RZX, 2010 WL 342632, at *1, *6-7 (C.D. Cal. Jan. 29, 2010) (nonperformance claim not preempted when, during a layover, plaintiffs missed connecting flight because of incident with airport and airline employees); Benjamin v. Am. Airlines, Inc., 32 F. Supp. 3d 1309, 1317-18 (S.D. Ga. 2014) (plaintiffs unable to check-in because airline had sold plaintiffs' tickets to another passenger).

Second, a number of those cases appear to assume that the scope of the liability provisions and the substantive scope of the Convention are coterminous. See Nankin, 2010 WL 342632, at *8 ("Additionally, and more fundamentally, the Convention is not applicable here since plaintiffs allege nonperformance of their air transport contract, not mere delay in performance."); Benjamin, 32 F. Supp. 3d at 1318 ("This situation does not fall under Article 19's provision for delay . . . As a result, Article 19 does not preempt Plaintiffs' claim for breach of contract."); Atia v. Delta Airlines, Inc., 692 F. Supp. 2d 693, 696 (E.D. Ky. 2010) ("The plain language of Article 19 of the Montreal Convention indicates that it governs claims for delay, not nonperformance."). As explained above, the Convention's preemptive effect is determined by the Convention's substantive scope and not by the scope of the Convention's liability provisions.

Lastly, though two district courts reached disparate conclusions when faced with situations somewhat analogous to the situation alleged here, those courts failed to discuss when the alleged contract breach occurred. Compare Sanches-Naek, 260 F. Supp. 3d at 195-96 (holding that though the airline failed to fly plaintiffs to their destination, nonperformance claim was preempted because passenger had boarded the plane) to Atia v. Delta Airlines, Inc., 692 F. Supp. 2d 693, 696 (E.D. Ky. 2010) (nonperformance claim not preempted where plaintiff deboarded and was subsequently banned from flying with defendant and ticket was not refunded).

## CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss is GRANTED. As this is the first time the court has dismissed plaintiff's complaint and given that it is conceivable that plaintiff could state a claim for breach of contract that is not preempted, the dismissal is WITH LEAVE TO AMEND. Plaintiff's amended complaint may not, however, include a malicious prosecution claim as that claim is preempted by the Montreal Convention. If, consistent with the above, plaintiff believes he can allege a non-preempted breach of contract claim, he may do so by alleging facts about the contract and the alleged breach. Plaintiff's amended complaint may also attempt to state a claim under the Montreal Convention in lieu of a common law claim or in the alternative.

No other claims or parties may be added without leave of court or stipulation by defendant. Plaintiff's amended complaint may also not seek punitive damages because neither of the allowed claims provides a basis for punitive damages. See No Award in Contract Case., 1 Witkin, Summary 11th Contracts, Ch. 1. XV.A.5. Punitive Damages, § 901 (a) (2017); Art. 29 ("[P]unitive . . . damages shall not be recoverable.").

Any amended complaint shall be filed no later than April 27, 2018.

**IT IS SO ORDERED.**

Dated: March 30, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge